IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RHONDA C. MASON                                              PLAINTIFF

V.                                                           CIVIL ACTION NO.
                                                             3:08-CV-123-SAA
MICHAEL J. ASTRUE,
Commissioner of Social Security                              DEFENDANT

**MEMORANDUM OPINION**

      This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Rhonda Mason for a period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Mason's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636 (c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

**PROCEDURAL HISTORY**

      Rhonda Mason protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplementary security income on January 10, 2006. Mason alleged the onset of her disability was December 29, 2005. Tr. 102. The claims were administratively denied. Tr. 49-66. The plaintiff timely filed a request for a

hearing before an administrative law judge [ALJ] which was held on March 5, 2008. Tr. 25-48. On March 28, 2008, the ALJ issued his decision denying the claim. Tr. 5-16. The Appeals Council reviewed the additional evidence presented by Mason, but denied her request for further review, Tr. 1-4, making the ALJ's decision the final decision of the Commissioner, now ripe for the court's review.

## **FACTS**

The plaintiff was born September 27, 1963 and was forty-four years old at the time of the ALJ hearing. Tr. 29. She has a twelfth grade education. Tr. 29. Her past relevant work included work as a personal care assistant, a cashier and a convenience store worker. Tr. 46-47. She alleged that she was unable to work due to gout, arthritis in her hands and feet and depression. Tr. 117.

The ALJ found that Mason had not engaged in substantial gainful activity since December 29, 2005, and that she had the following severe impairments: fibromyalgia, gout, psoriasis, polyarthralgias, hypertension and obesity. Tr. 10. He reviewed the State agency psychologist's Psychiatric Review Technique Form [PRT] and determined that Mason's depression was non-severe. Tr. 12. He reviewed the medical evidence and determined that Mason did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 04, Subpart P, Appendix 1. Tr. 13-14.

After reviewing the record, Mason's symptoms, the objective medical evidence and the opinions of Dr. Bennet, Dr. Pomphrey and the PRT, the ALJ determined that she had the residual functional capacity [RFC] to lift/carry and push/pull twenty-five pounds frequently, and fifty pounds occasionally; stand/walk 6 hours during an 8 hour workday, and sit 2-hours during

2

an 8-hour work day Tr. 14.  Relying on the testimony of a vocational expert, the ALJ concluded that with her RFC , Mason was able to return to her past relevant work as a health care attendant, a cafeteria manager, convenience store cashier, fast food cook, or as a bundler, none of which require work-related activities inconsistent with her RFC.  Tr.16.

## **DISCUSSION**

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."  *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2]  If the Commissioner's decision is supported by the evidence, then it is conclusive and must be

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

3

upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner determines the plaintiff's residual functional capacity, and the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can

---

[3] *See* 20 C.F.R. §§ 416.920, 404.1520(2007).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. §§ 416.920(a)(4)(I), 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. §§ 416.920(a)(4)(iv),404.1520(a)(4)(iv)( 2007).

[9] 20 C.F.R. §§ 416.920(a)(4)(v),404.1520(a)(4)(v)(2007).

perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

Mason contends that the Commissioner erred in that the ALJ failed to give the proper weight to her treating physician's assessment and failed to properly assess her depression.

### Failure to Give the Proper Weight to Mason's Treating Physician's Testimony

Mason argues that the ALJ erroneously declined to afford her treating physician Dr. Secrest the proper deference as he was a "very seasoned internist and certainly knew how to treat individuals presenting multiple impairments." Docket 12, p. 7. An ALJ may discount a claimant's treating physician's opinion for good cause, such as when the physician's opinion "is conclusory, is unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original). The regulations cited in *Newton* also correspond to 20 C.F.R. §§ 416.927(d) and 416.912(e), which are applicable in cases, such as this one, also brought under Title XVI of the Social Security Act. Under 20 C.F.R. § 404.1527(d).[11] The factors to be considered in assessing the opinion of the *treating* physician include such common sense considerations as the length of the treatment relationship, frequency

---

[10] *Muse*, 925 F.2d at 789.

[11] *See also* § 416.927(d).

5

of examination by the physician, the nature and extent of the treatment relationship and the "supportability" of a medical source's opinion by relevant evidence. Section 404.1527(d)(3)[12] specifically defines "supportability" by detailing the approach that should be taken with non-examining medical sources whose opinions are not founded upon direct knowledge of a particular claimant's case:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

Although an ALJ is required by federal regulation to consider six factors when determining whether or not the treating physician opinion is given controlling weight, *see* 20 C.F.R. § 404.1527(d); § 416.927(d), and although the ALJ in this case did not specifically enumerate all the six factors followed by an explanation, there nevertheless is more than substantial evidence to support his conclusion to not give controlling weight to Dr. Secrest's opinion. Dr. Secrest's medical source statement assessed Mason has having physical limitations consistent with a "less than sedentary" exertion level. Tr. 11, 213-16. As noted by the ALJ, Dr. Secrest's assessment was not at all consistent with the objective medical evidence, the usual treatment of individuals who are completely disabled or the opinions of other examining physicians. Dr. Secrest's treatment notes from 2005 through 2006 do not include any objective

---

[12] *See also* § 416.927(d)(3).

6

medical evidence to support his assessment of Mason's physical abilities, and they contain limited discussion of objective medical findings; lab results, except for liver function tests, were essentially normal. Tr. 189, 192. In contrast, Dr. Montgomery's treatment notes from November 2007, include detailed physical examinations, specific laboratory testing for arthritis and gout that were negative and a discussion of the test results in relation to her symptoms. Tr. 223-38. Dr. Montgomery's physical examination revealed normal range of motion in both upper and lower extremities, no joint enlargement or tenderness and no gout tophi. Tr. 233.

Dr. Bennett performed a consultative examination of Mason on April 11, 2006. Tr. 195-196. Dr. Bennett noted that she had a normal gait, her upper extremities were extremely normal as demonstrated by 5/5 grip strength and 5/5 manual dexterity; her lower extremities were also normal, including full range of motion in her hips, knees and ankles, normal straight leg raises at 60 degrees, the ability to squat and arise and walk on her tiptoes; Mason could bend 90 degrees at the waist, and there was no evidence of muscle wasting in her calves. Tr. 196.

Mason was also seen by consultative examiner Dr. Pomphrey on January 23, 2008. Dr. Pomphrey found her to have no impairment-related physical limitations. Tr. 240. Overall, Dr. Pomphrey's physical examination of Mason revealed her gait was normal, and there was no visible or palpable evidence of joint deformity, erythema, swelling or effusion in either her upper or lower extremities; although Mason had difficulty standing on her toes, the difficulty appeared to be a balance issue rather than a product of a physical impairment. Tr. 244. She had full range of motion of the neck with complaints of pain with full extension. *Id.* Mason complained of tenderness to light touch all down her back, but Dr. Pomphrey noted that there was no muscle spasm. *Id.* She had forward flexion of her back to 90 degrees, extension to 35 degrees and

lateral flexion to 30 degrees in either direction. *Id.* Straight leg tests revealed pain at 90 degrees and the Patrick's test produced complaints of pain when performed bilaterally. Tr. 244. Mason's knees, hips, ankles, hands, wrists, forearms, elbows and shoulders demonstrated a full range of motion without joint swelling, effusion or instability. Tr. 245. Dr. Pomphrey concluded that Mason's generalized complaints of pain were unsubstantiated by any objective findings. Tr. 245.

In light of the clinical and objective finding by the above physicians, along with the complete lack of objective medical evidence to the contrary, the court finds that there was substantial evidence to support the ALJ's conclusions and his decision to discount Dr. Secrest's opinions. In the absence of objective medical evidence which contradicts the ALJ's conclusion, the court declines to conclude that the ALJ's determination violates 20 C.F.R. §§ 404.1527 and 416.927.

The determination of whether pain is disabling is within the ALJ's discretion. *Hollis v. Bowen*, 837 F. 2d 1378, 1384 (5th Cir. 1988). Subjective complaints of pain must be supported with objective medical evidence that could be expected to cause the pain. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); 42 U.S.C. § 423 (d)(5)(A)(2007). Mason's pain could be disabling if corroborated by the objective medical evidence, but as discussed above, there was no objective evidence to support her description of disabling pain.

<u>Failure to Properly Assess Mason's Depression</u>

Mason contends that the ALJ failed to thoroughly evaluate her mental impairments, noting that she had been prescribed Xanax, an anti-anxiety medication. Docket # 12, p. 8. At step two of the sequential evaluation process, Mason bears the burden of demonstrating that her depression is severe, meaning that it causes some limitation upon her ability to perform work-

8

related activities. *See* 20 C.F.R. §404.1520 (2009). Basic work functions include walking, standing, sitting, lifting, seeing, hearing, speaking, understanding, remembering, carrying out simple instructions, responding appropriately to supervision and usual work situations and dealing with changes in routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b)(2009). As the burden of proof remains on the claimant at this step of the sequential evaluation process, it was up to Mason to demonstrate that her depression affects her ability to perform basic work related functions.

Mason was evaluated by state agency psychologist Rudolph Warren, who submitted a PRT on May 23, 2006, Tr. 199-212, which noted that Mason was diagnosed with mild depression with no severe functional limitations by her treating physician. Tr. 211. Dr. Warren found that her impairments related to her mild depression were not severe. Tr. 199, 202. He found that her functional limitations related to activities of daily living, maintaining social functioning and concentration, persistence and pace were mild, that she had no episodes of decompensation and that there was no evidence of "C" criteria. Tr. 209-210.

The ALJ is required to analyze Mason's depression according to a special procedure, known as a "technique." 20 C.F.R. §§ 404.1520a, 416.920a (2009). Under the technique the ALJ analyzes the claimant's symptoms, findings and functional limitations in a consistent manner. *See* SOCIAL SECURITY DISABILITY LAW AND PROCEDURE § 5:38, p. 508. The technique assesses potential impairments in four areas of work related function including: (1) activities of daily living; (2) social functioning; (3) concentration, persistence of pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ did perform this required analysis after reviewing the State Agency psychologist's findings that Mason had only

9

mild impairments in any of the three areas of functioning assessed under the "technique" and no episodes of decompensation. Tr. 12, 209. Under the regulations, the ALJ was correct in assessing Mason's depression as non-severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Moreover, there was no objective medical evidence to contradict the state agency psychologist's opinions that Mason's mild depression did not cause severe limitations in her ability to function. As noted by the ALJ, there were no treatment records for ongoing mental health care or any record of inpatient mental health treatment. Tr. 12. Mason presented no evidence that her depression caused any severe impairment in her ability to perform basic work-related functions such as inability to concentrate, difficulty in getting along with others or inability to follow directions. *See generally* 20 C.F.R. §§ 404.1521(b); 416.921(b). In summary, the court finds that the ALJ properly assessed the severity of Mason's depression and its effect on her ability to perform basic work related functions, and the record provides substantial evidence to support the ALJ's conclusions.

## CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate judgment affirming the Commissioner's final decision will issue simultaneously with this Memorandum Opinion.

This the 12th day of May, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE